[Cite as *In re J.F.*, 2026-Ohio-2963.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re J.F.

Court of Appeals No.  {48}L-26-00044
{48}L-26-00056

Trial Court No.  24301953
25307302

**DECISION AND JUDGMENT**

Decided:  July 31, 2026

* * * * *

Kevin Ankney, for appellee.

Robin E. Fuller, for appellant.

* * * * *

**SULEK, J.**

{¶ 1} In this consolidated appeal, appellant, B.F. ("Father"), appeals the judgment of the Lucas County Court of Common Pleas, Juvenile Division, terminating his parental rights and awarding appellee Lucas County Children Services ("LCCS") permanent custody of his minor child, J.F.  For the reasons that follow, the juvenile court's judgment is affirmed.

## I. Factual Background and Procedural History

{¶ 2} On September 30, 2024, LCCS filed a complaint in dependency and neglect regarding J.F., born in 2024. The complaint alleged that in August 2024, LCCS received

a referral indicating that J.F. had several congenital abnormalities requiring specialized care and that he had missed multiple appointments including physical therapy, home health, orthopedic, and genetic testing. There were concerns regarding Mother's ability to care for the child and Father's incarceration for violating a protection order as to Mother.

{¶ 3} Mother informed an LCCS investigator that transportation issues caused them to miss the appointments. Mother reported physical, mental, and verbal abuse in her relationship with Father, that there is a current protection order in place, and that they are no longer in a relationship. The investigator spoke with Father in jail. Father reported that prior to his incarceration he took J.F. to his medical appointments and he denied any domestic violence with Mother.

{¶ 4} At the December 2, 2024 adjudication, Mother and Father stipulated to findings of dependency and neglect and the juvenile court awarded LCCS temporary custody. The agency placed J.F. with maternal grandmother, J.M.

{¶ 5} On September 23, 2025, LCCS moved for permanent custody based on the agency's belief that J.F. cannot or should not be placed with either parent within a reasonable time and that permanent custody to LCCS is in his best interest. On October 27, 2025, paternal grandmother, S.F., filed a third-party complaint for legal custody of J.F.

2.

{¶ 6} Still incarcerated, Father filed a request to remotely participate in the permanent custody hearing. On December 4, 2025, the court denied the request finding:

> Father does not have an absolute right to be present for the upcoming hearing. Indeed, the Ohio Sixth District Court of Appeals concluded that "a parent's due process rights are not violated when: (1) the parent is represented at the hearing by counsel, (2) a full record of the hearing is made, and (3) any testimony that the parent wishes to present could be presented by deposition." *In re Joseph P.*, 2003-Ohio-2217, ¶ 52 (6th Dist.), citing *In re Leo D.*, 2002-Ohio-1174, ¶ 9 (6th Dist.). The Court finds that the above requirement are, or will be, met by the trial date. The Court finds no reason, therefore, to allow Father to participate by Zoom at trial.

A month later, Father requested conveyance in order to participate in the permanent custody hearing. He stated that he had not been deposed in the matter and wished to contest LCCS' motion. The juvenile court denied the request.

{¶ 7} At the January 14, 2026 hearing on LCCS' motion for permanent custody and paternal grandmother's legal custody complaint, the court took judicial notice of Father's opposition to the motion and his support for paternal grandmother to be awarded legal custody. LCCS presented testimony from the LCCS caseworker, maternal grandmother, and the guardian ad litem ("GAL"). Father, represented by counsel, presented testimony from paternal grandmother in support of her legal custody complaint. Father's counsel cross-examined LCCS' witnesses and presented opening and closing argument.

{¶ 8} Following the hearing, the juvenile court entered its judgment terminating Father's and Mother's parental rights and denying paternal grandmother's third-party complaint for legal custody. As to Father, the court noted his current incarceration, that

3.

his motions to appear by Zoom and be conveyed were both denied, and that "[a]t no point was a request made to depose Father." Further that "[d]espite Father's unavailability, all parties stipulated that Father is opposed to the permanent custody motion, and that it is his wishes that his mother, [S.F.], obtain legal custody of his son." The court noted that prior to the hearing, Mother, while not entering a stipulation, expressed her agreement with LCCS' permanent custody motion.

{¶ 9} As to Mother, the court found that under R.C. 2151.414(E)(1), despite diligent efforts by LCCS, she continuously and repeatedly failed to remedy the conditions causing J.F.'s placement outside the home and that under R.C. 2151.414(E)(16), Mother selflessly agrees that permanent custody to LCCS is in J.F.'s best interest. As to both parents, they demonstrated a lack of commitment to J.F. under R.C. 2151.414(E)(4). And as to Father, under R.C. 2151.414(E)(12), his incarceration of a minimum of six years demonstrates that he is unable to care for J.F. within the 18-month statutory timeframe.

{¶ 10} The court then determined that it was in J.F.'s best interest for LCCS to be granted permanent custody. Specifically, the court found that J.F. had been placed with maternal grandmother since September 2024, and that the GAL reports he is stable and thriving. The court concluded that the only way for his stability to be maintained was for maternal grandmother to adopt J.F. Finally, while acknowledging that paternal grandmother expressed an interest in accepting legal custody of J.F., the court found that such placement is not in his best interest and there are no other suitable relatives willing to accept legal custody.

4.

**{¶ 11}** This appeal followed.

## II. Assignments of Error

**{¶ 12}** Father raises two assignments of error on appeal:

I. The trial court abused its discretion by denying defendant's motion to convey and motion to appear virtually.

II. Trial court errored [sic] by denying defendant's due process rights.

## III. Analysis

**{¶ 13}** Father's assignments of error are related and will be jointly addressed. Father contends that the juvenile court abused its discretion in not allowing him to attend the hearing via Zoom or to be conveyed for the hearing and that this resulted in a violation of his due process rights.[1]

**{¶ 14}** In *In re S.M.*, 2015-Ohio-4627, ¶ 20 (6th Dist.), this court observed:

A trial court has discretion to decide whether to proceed with a permanent custody hearing in the absence of an incarcerated parent. *State ex rel. Vanderlaan v. Pollex*, 96 Ohio App.3d 235, 236, 644 N.E.2d 1073 (6th Dist.1994). However, an individual has a "basic," "fundamental," and "essential" civil right to raise his or her own children. *See In re Sprague*, 113 Ohio App.3d 274, 276, 680 N.E.2d 1041 (12th Dist.1996); *In the Matter of: Dylan R.*, 6th Dist. Lucas No. L-02-1267, 2003-Ohio-69, 2003 WL 99502, ¶ 21. Because of this very important right, when an incarcerated parent is not transferred to a permanent custody hearing, this court has repeatedly held that "a parent's due process rights are not violated when: (1) the parent is represented at the hearing by counsel, (2) a full record of the hearing is made, and (3) any testimony that the parent wishes to present could be presented by deposition." *In re Joseph P.*, 6th Dist. Lucas No. L-02-1385, 2003-Ohio-2217, 2003 WL 2007268, ¶ 52; *In re*

---

[1]Father makes no argument regarding the juvenile court's findings under R.C. 2151.414(B)(1)(A) or 2151.414(E). He likewise does not contest that awarding LCCS permanent custody was in J.F.'s best interest. Thus, the court's review is limited to Father's inability to participate in the permanent custody hearing.

5.

*Jesse P.*, 6th Dist. Lucas No. L-04-1028, 2004-Ohio-3801, 2004 WL 1595103, ¶ 51; *In re Johnny H.*, 6th Dist. Lucas No. L-06-1044, 2007-Ohio-748, 2007 WL 549549, ¶ 21.

{¶ 15} Father relies on three cases to support his argument. *M.C. v. S.L.*, 2014-Ohio-3338 (10th Dist.) and *Shepard Grain Co. v. Creager*, 2005-Ohio-1717 (2d Dist.), involve civil actions where the incarcerated, unrepresented parties requested but were denied the ability to participate in the proceedings. On appeal, the courts concluded that the trial court should have examined alternatives to conveyance to allow participation in the proceedings. *M.C.* at ¶ 13; *Shepard Grain* at ¶ 24.

{¶ 16} Next, in *In re C.L.*, 2022-Ohio-3596 (12th Dist.), the juvenile court arranged for the incarcerated father to participate remotely by video conference. The Friday before the Monday dispositional hearing, the prison notified the court that father would not participate in the hearing because he was in COVID-19 quarantine. *Id.* at ¶ 4. Father's counsel orally moved for a continuance noting that father anticipated being released from prison in approximately one month. *Id.* The court denied the request. *Id.* On appeal, the court concluded that the last-minute withholding of father's ability to participate resulted in

> not enough time for Father's counsel to have come up with a new plan for the hearing, called and arranged for new witnesses (who were not previously needed because Father had planned to testify), and prepared a stipulation or proffer about the testimony that Father would have provided, all without being permitted to have any contact with Father.

*Id.* at ¶ 14.

6.

{¶ 17} *M.C.* and *Shepard Grain* are distinguishable in that the trial courts denied incarcerated individuals the opportunity to appear without considering alternative means for them to meaningfully participate in proceeding. In *C.L.*, the appellate court's decision reversing the denial of the continuance is based on the timing of the quarantine, father's impending release from prison, and the fact that it undermined his entire trial strategy.

{¶ 18} Similar to the present facts, in *In re Ang.O.*, 2018-Ohio-5195 (6th Dist.), an incarcerated father challenged the juvenile court's denial of his request to continue the permanent custody hearing until his release from prison. *Id.* at ¶ 17. Finding no abuse of discretion, this court observed that "appellant was represented by counsel at the hearing; counsel vigorously cross-examined the witnesses. A full transcript was made of the proceedings and has been reviewed by this court. Further, appellant's wish that his mother be awarded custody was also before the court." *Id.* at ¶ 18.

{¶ 19} Here, as in *Ang.O.*, the transcript of the permanent custody hearing demonstrates that Father's counsel fully participated in the proceedings by cross-examining LCCS' witnesses and conducting direct and redirect examination of Father's witness, paternal grandmother. Counsel emphasized Father's wish that paternal grandmother be awarded legal custody. In addition, over a month preceding the hearing, the juvenile court informed Father that his testimony could be presented by deposition, but this avenue was not pursued. Thus, in accordance with *Ang.O.* and *In re S.M.*, and the cases cited therein, the juvenile court did not abuse its discretion or deny Father due

7.

process in denying his request to attend the permanent custody hearing via Zoom or to be conveyed. Father's first and second assignments of error are not well-taken.

## IV. Conclusion

{¶ 20} Upon due consideration, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Pursuant to App.R. 24, costs of this appeal are assessed to Father.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.

Thomas J. Osowik, P.J.          _____
                                                           JUDGE
Christine E. Mayle, J.

                               _____
Charles E. Sulek, J.                             JUDGE
CONCUR.

                               _____
                                                           JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.